IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SNAP COURT, L.L.C., d/b/a SNAPSPORTS COMPANY, a Utah limited liability corporation,<br><br>    Plaintiff,<br><br><br><br>    v.<br><br><br><br>INDUSTRIAL ENVIRONMENTAL MANAGEMENT, LLC, a Mississippi Limited Liability Company, GLOBAL CONTRACTING, LLC, a Mississippi Limited Liability Company, JAMES MICHAEL SPIERS, an individual, KELTON SMITH a.k.a. "James Kelton Smith," an individual, WILLIAM E. BLOSSMAN, II. a.k.a. "Eddie Blossman," an individual, and CSC APPLIED TECHNOLOGIES, LLC, a Mississippi Limited Liability Company,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:12-CV-908 TS |

This matter is before the Court on various motions, including Plaintiff Snap Court, L.L.C., d/b/a Snap Sports Company's ("Snap Court") Motion to Remand to State Court and Request for Costs and Fees and Corrected Motion to Remand and Request for Costs and Fees.

For the reasons discussed more fully below, the Court will grant in part and deny in part Snap Court's Motions to Remand and deny the remaining pending motions as moot.

## I.  BACKGROUND

Snap Court is a Utah limited liability company with its registered office located in Salt Lake City, Utah.  The majority of the Defendants, including Global, Spiers, Industrial Environmental Management, LLC ("IEM"), Kelton Smith ("Smith"), and William E. Blossman, II ("Blossman"), are all domiciled in Mississippi.  The remaining Defendant, CSC Applied Technologies LLC ("CSC"), is a Delaware limited liability company, with its primary office in Texas, and a local office in Mississippi.

This dispute arises out of a contract (the "Subcontract") Snap Court entered into with IEM to supply and assist in the installation of 38,768 square feet of modular tile to the floor of a tennis court on Keesler Air Force base in Biloxi, Mississippi.  IEM was a subcontractor on the project for CSC, a general contractor.  CSC contracted with the Department of the Air Force Air Education and Training Command at Keesler Air Force Base for the renovation work at the tennis court.

Pursuant to the Subcontract, Snap Court was to receive $101,537.40 in exchange for its provision and installation work.  On or about September 13, 2011, Snap Court upheld its end of the bargain by delivering and installing the flooring tiles.  The same day, Snap Court provided IEM with an invoice for $101,537.40.  On November 10, 2011, CSC paid IEM for the work performed on the project.  On November 21, 2011, Keesler Air Force Base paid CSC in full for the completed tennis court project.  IEM failed to make any payment to Snap Court.

During the same time period that Smith and Blossman were operating IEM, they were also owners and corporate officers in Global.  Spiers is the majority shareholder in Global and is also a corporate officer.  IEM, Global, Smith, and Blossman all use the same mailing address. Snap Court asserts that this joint address and common ownership interest between IEM and Global "demonstrates the intentional creation of [Global] as an alter ego for IEM."[1]  Snap Court also states its belief that Smith, Blossman, and Spiers transferred funds from IEM to Global, to the detriment of IEM's creditors, including Snap Court.[2]  In March 2012, IEM, Smith, and Blossman filed for Chapter 7 bankruptcy.

Since September 18, 2011, Snap Court has contacted IEM on more than 300 occasions attempting to recover the amount it was owed under the Subcontract.  Snap Court filed the instant suit in Utah state court seeking to recover the amounts it was owed from IEM, Global, Spiers, Smith, Blossman, and CSC.  On September 26, 2012, CSC removed this matter to this Court.  Shortly after removal, Snap Court filed a notice of voluntary dismissal of Smith, Blossman, and IEM.

## II.  DISCUSSION

The Court begins its analysis with Snap Court's Motions to Remand, as resolution of that issue bears on the propriety of hearing the parties' remaining motions.

Snap Court asserts that Defendant CSC's notice of removal is procedurally defective because the remaining Defendants did not consent to removal in a timely manner.  Based on this failure, Snap Court requests the Court remand this matter to state court and award it the costs and

---

[1]Docket No. 2-1, at 5.

[2]*See id.*

3

fees it incurred as a result of the removal.  CSC contends that its notice was not procedurally defective because it did not know at the time it filed its notice of removal that the other Defendants had been served and, in any event, argues that the remaining Defendants' consent was not required because they were fraudulently joined.

The Tenth Circuit has stated that "there is a presumption against removal jurisdiction."[3] Further, "[r]emoval statutes are to be strictly construed . . . and all doubts are to be resolved against removal."[4]  "[I]t is well established that all defendants in a multi-defendant case must join in the petition for removal."[5]  "'The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal.'"[6]  The removal statute, 28 U.S.C. § 1446, provides that "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal."

Here, it is clear from the record that Defendants Global and Spiers did not file a timely consent to the notice of removal.  CSC filed its notice of removal on September 26, 2012.  Spiers and Global were served on September 20, 2012.  Thus, Spiers and Global were required to have

---

[3]*Laughlin v. Kmart Corp*., 50 F.3d 871, 873 (10th Cir. 1995).

[4]*Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

[5]*Jarvis v. FHP of Utah, Inc*., 874 F. Supp. 1253, 1254 (D. Utah 1995).

[6]*Harper v. AutoAlliance Int'l Inc.*, 392 F.3d 195, 201 (6th Cir. 2004) (quoting *Brierly v. Alusuisse Flexible Packaging, Inc*., 184 F.3d 527, 533 n.3 (6th Cir. 1999)); *see also Jarvis*, 874 F. Supp. at 1254 (stating that rule of unanimity requires that "each defendant officially and unambiguously consent to a removal petition filed by another defendant, within thirty (30) days of receiving the complaint").

submitted their consent to removal, at the latest, by October 20, 2012.  Spiers and Global,

however, did not file a consent to removal until November 9, 2012.  As such, the notice of

removal in this case was procedurally defective.[7]

CSC nevertheless argues that the Court should not find its notice procedurally defective

because, at the time it filed its notice, CSC was not aware that Spiers and Global had been

served.  CSC cites a line of cases from other jurisdictions adopting such an exception to the

general rule of unanimity.  For example, in *Millstead Supply Co. v. Casualty Insurance Co.*,[8] the

court held that "joinder in or consent to the removal petition must be accomplished by only those

defendants: (1) who have been served; and, (2) whom the removing defendant(s) actually knew

or should have known had been served."[9]  The *Millstead* court reasoned that:

> To mandate that all defendants who have been actually served must join in any
> removal filed after the actual time of service upon such defendants would be
> inconsistent with the spirit and purpose of the federal rules, as well as contrary to
> logic and common sense, and could create motivation for improper conduct in
> serving defendants.[10]

The *Millstead* court went on to find that the removing party was reasonably diligent in its

compliance with the removal statute because it inquired with the court as to whether a return of

service had been filed and, at the time of the inquiry, no notice had been filed.[11]  Similarly, in

---

[7]*See Jarvis*, 874 F. Supp. at 1254.

[8]797 F. Supp. 569 (W.D. Tex. 1992).

[9]*Id*. at 573.

[10]*Id.*

[11]*Id.*

*Laurie v. National Railroad Passenger Corp.*,[12] the court adopted the rule that a removing party should "obtain consent only from those co-defendants who it knew or should have known, in the exercise of reasonable diligence had been served."[13]

CSC concedes that neither the Tenth Circuit nor this Court has "opined on this exception to the consent requirement."[14]  The Court would note that this exception runs contrary to applicable precedent from this Court, which has strictly enforced the procedural requirements for removal.[15]  However, even assuming that the reasonable diligence standard were to apply, the Court finds that Defendants have failed to meet that standard.

Courts that have applied the "reasonable diligence" standard have not applied that term consistently.[16]  In all such cases, however, some affirmative action was taken by the removing party to identify the defendants who must be joined in the removal.  CSC has not come forward with any evidence of affirmative actions it took to determine what defendants, if any, needed to

---

[12]2001 WL 34377958 (E.D. Pa. March 13, 2001).

[13]*Id*. at *1.

[14]Docket No. 17, at 4.

[15]*See Jarvis*, 874 F. Supp. at 1254; *Skyline Holdings Grp., LLC v. Vilchez*, 2012 WL 1840327, at *2–3 (D. Utah Apr. 20, 2012); *Swanson v. U.S. Bank, N.A.*, 2011 WL 1585134, at *1–2 (D. Utah Apr. 26, 2011).

[16]*Compare Laurie*, 2001 WL 34377958, at *1 (finding that removing party was reasonably diligent where it checked the docket repeatedly and called the clerk's office on several occasions to determine whether proof of service had been filed), *with Pianovski v. Laurel Motors, Inc.*, 924 F. Supp. 86 (N.D. Ill. 1996) (finding that a phone call to the clerk's office and inquiry to the docketing clerk of the law firm was not sufficient to constitute diligence), *and Keys v. Konrath*, 1994 WL 75037 (N.D. Ill. March 10, 1994) (finding that removing party failed to use reasonable diligence when he failed to ask one of the defendants he represented whether he had been served).

join in its notice of removal.  As such, CSC has failed to establish that it acted in reasonable diligence.

This conclusion is supported by the reasoning of a case relied upon by CSC, *Bogner v. Ace Forms, Inc.*[17]  In that case, the defendants sought removal based on diversity jurisdiction. The court noted the applicability of the unanimity rule and, citing to § 1446(b), stated that "[t]hree of the eight defendants in this case did not join in the petition in the thirty days allowed."[18]  The *Bogner* court went on to deny the motion to remand on the basis that "the three nonjoining defendants had not been served at the time the removal petition was filed."[19]  The court stated, however, that if the defendants "had in fact been served at the time the petition was filed, remand would be required because all parties served failed to join in the removal petition or consent to removal within thirty days."[20]

In the instant case, all of the Defendants were indeed served at the time CSC filed its notice of removal.  Although Snap Court failed to file the notices of service on the state court docket prior to CSC's petition for removal, Snap Court remedied this failure by filing the notices on this Court's docket on October 3, 2012.  Thus, CSC was made aware of the service of the remaining Defendants well in advance of the termination of the 30-day window and, under the reasoning of *Bogner*, remand is required.

---

[17]1988 WL 135145 (D. Kan. Nov. 23, 1988).

[18]*Id*. at *2.

[19]*Id*. at *3.

[20]*Id*. (internal citations omitted).

In a novel alternative argument, CSC asserts that it was not required to obtain the consent of Defendants Global and Spiers because they were fraudulently joined as Defendants to this matter.  Fraudulent joinder is an exception to the unanimity rule.[21]   As CSC recognizes, this exception typically involves "a defendant who is non-diverse to the plaintiff and who the removing parties contend was joined to defeat diversity."[22]  Yet, CSC asserts that there is "no principled basis for refusing to apply the principles of fraudulent joinder" on the facts of this case.[23]

Joinder is generally considered fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."[24]  "This standard is more exacting than that for dismissing a claim under [Rule] 12(b)(6)."[25]  The Supreme Court has instructed that:

> when in such a case a resident defendant is joined with the nonresident, the joinder, even although fair upon its face, may be shown by a petition for removal to be only a fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly engendering that conclusion.  Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet 'fraudulent' to the joinder, will not suffice: the showing must be such

---

[21]*See Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995).

[22]Docket No. 17, at 5.

[23]*Id*. (quoting *Morris v. Mid-Century Ins. Co.*, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012)).

[24]*Boyer v. Snap-On Tools Corp*., 913 F.2d 108, 111 (3d Cir. 1990).

[25]*Montano v. Allstate Indem*., 211 F.3d 1278, at *2 (10th Cir. 2000) (unpublished).

as compels the conclusion that the joinder is without right and made in bad faith. . . .[26]

Applying this standard to the instant case, the Court finds that the joinder of Defendants Global and Spiers is not "a sham or fraudulent device to prevent removal."[27]  CSC has certainly pointed out weaknesses in Snap Court's claims against Global and Spiers.  It does not necessarily follow, however, that those Defendants were fraudulently joined to defeat diversity in this case.  Further, CSC has come forward with no evidence or argument that the joinder of Global and Spiers was made in bad faith.

In sum, the Court finds that CSC's notice of removal is procedurally defective and none of the exceptions espoused by CSC apply.  The Court will therefore remand this case to state court without reaching the parties' remaining motions.[28]

As a final matter, the Court turns to Snap Court's request for fees and costs.  Pursuant to 28 U.S.C. § 1447(c), an order remanding a case may require payment of costs and expenses, including attorney fees.  "[T]he standard for awarding fees should turn on the reasonableness of the removal."[29]  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."[30]

---

[26]*Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) (internal citations omitted).

[27]*Smoot v. Chi. Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir. 1967).

[28]*See Jarvis*, 874 F. Supp. at 1255.

[29]*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

[30]*Id*.

9

Because CSC had an objectively reasonable basis for seeking removal, the Court will deny Snap Court's request for fees and costs.

### III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Snap Court's Motion to Remand to State Court and Request for Costs and Fees (Docket No. 14) and Corrected Motion to Remand and Request for Costs and Fees (Docket No. 20) are GRANTED IN PART AND DENIED IN PART, pursuant to the terms of this ORDER.  It is further

ORDERED that the remaining motions (Docket Nos. 4, 27, 29, 30, 33, 40, 42, 46) are DENIED without prejudice as being moot.

The hearing currently scheduled in this matter for April 18, 2013 is hereby STRICKEN.

The Clerk of the Court is directed to remand this case to the Third Judicial District Court of Salt Lake County, State of Utah.

DATED   April 4, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge